## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| EDWARD K. GAMSON and | * | |
| LOWELL E. CANADAY | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 14-527 (JEB) |
| | * | |
| BRITISH AIRWAYS PLC | * | |
| | * | |
| Defendant. | * | |

## DEFENDANT'S MOTION TO DISMISS

Defendant British Airways Plc ("British Airways"), by counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby files its Motion to Dismiss Plaintiffs' Complaint.  Pursuant to LCvR 7, British Airways has filed, and incorporates herein, its Statement of Points and Authorities.

As set forth in British Airways's Statement of Points and Authorities, Plaintiffs make two claims in their Complaint, both based on state common law:  British Airways (i) issued their tickets incorrectly, and (ii) transported them to an incorrect airport.  Plaintiffs' claim that British Airways transported them to an incorrect airport arises under the Montreal Convention, a treaty that preempts their state law claim but, in the circumstances of this case, provides no remedy for Plaintiffs.  Plaintiffs' claim that British Airways issued their tickets incorrectly is expressly preempted by 49 U.S.C. § 41713(b)(1), a provision of the federal Airline Deregulation Act.  Accordingly, the Court should dismiss Plaintiffs' Complaint in its entirety because it fails to state a claim upon which relief can be granted.

A proposed Order is filed herewith.

Respectfully submitted,

Dated:  April 4, 2014

/s/ Kenneth S. Nankin
Kenneth S. Nankin (DC Bar No. 420058)
Nankin & Verma PLLC
4550 Montgomery Avenue, Suite 775N
Bethesda, Maryland  20814
(202) 463-4911
(202) 463-6177 fax
ksn@nankin.com

Counsel for Defendant British Airways Plc

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of April, 2014, I served the foregoing

DEFENDANT'S MOTION TO DISMISS the accompanying NOTICE OF ELECTRONIC

FILING by delivering true and correct copies thereof by first class U.S. mail, postage

prepaid, to:

>Edward K. Gamson
>1901 23rd Street, NW
>Washington, DC  20008
>Plaintiff *Pro Se*
>
>Lowell E. Canaday
>1901 23rd Street, NW
>Washington, DC  20008
>Plaintiff *Pro Se*

>/s/ Kenneth S. Nankin
>Kenneth S. Nankin (DC Bar No. 420058)
>Nankin & Verma PLLC
>4550 Montgomery Avenue, Suite 775N
>Bethesda, Maryland  20814
>(202) 463-4911
>(202) 463-6177 fax
>ksn@nankin.com
>
>Counsel for Defendant British Airways Plc

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| EDWARD K. GAMSON and | * | |
| LOWELL E. CANADAY | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 14-527 (JEB) |
| | * | |
| BRITISH AIRWAYS PLC | * | |
| | * | |
| Defendant. | * | |

## DEFENDANT'S STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS

Kenneth S. Nankin (DC Bar No. 420058)
Nankin & Verma PLLC
4550 Montgomery Avenue, Suite 775N
Bethesda, Maryland  20814
(202) 463-4911
(202) 463-6177 fax
ksn@nankin.com

Counsel for Defendant British Airways Plc

**Table of Contents**

Page

I.      Preliminary Statement                                                      1

II.     Procedural Background                                                      2

III.    Statement of Facts                                                         2

IV.     Standard of Review                                                         3

V.      Argument                                                                   4

        A.      The Montreal Convention Exclusively Governs, and Preempts,
                Plaintiffs' Claim That British Airways Transported Them to an
                Incorrect Stopping Place                                           4

                1.      Plaintiffs' Claim Arises Under the Montreal Convention     4

                2.      The Montreal Convention Preempts Plaintiffs' Claim
                        That British Airways Transported Them to an Incorrect
                        Stopping Place                                             6

        B.      The Montreal Convention Provides No Remedy for Plaintiffs'
                Claim                                                              7

        C.      The Airline Deregulation Act Preempts Plaintiffs' Claim That
                British Airways Issued Their Tickets Incorrectly                   8

VI.     Conclusion                                                                 12

Certificate of Service                                                             14

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| EDWARD K. GAMSON and | * | |
| LOWELL E. CANADAY | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 14-527 (JEB) |
| | * | |
| BRITISH AIRWAYS PLC | * | |
| | * | |
| Defendant. | * | |

**DEFENDANT'S STATEMENT OF POINTS AND**
**<u>AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS</u>**

Defendant British Airways Plc ("British Airways"), by counsel, hereby files its Statement of Points and Authorities in support of its Motion to Dismiss.

**I.   <u>Preliminary Statement</u>**

Plaintiffs admit that they received an electronic ticket confirmation from British Airways indicating that they had purchased tickets that included a flight from London, England, to Grenada, West Indies.  Plaintiffs claim that they had intended to travel to Granada, Spain, and that they had expressed this intention to British Airways by telephone.  In their Complaint, Plaintiffs make two claims, both based on state common law:  British Airways (i) issued their tickets incorrectly, and (ii) transported them to an incorrect airport.  Plaintiffs' claim that British Airways transported them to an incorrect airport arises under the Montreal Convention, a treaty that preempts their state law claim but, in the circumstances presented here, provides no remedy for Plaintiffs.  Plaintiffs' claim that British Airways issued their tickets incorrectly is expressly preempted by a provision of the federal Airline Deregulation Act.  Accordingly, the Court should dismiss Plaintiffs' Complaint in its entirety

pursuant to Federal Rule of Civil Procedure 12(b)(6) because it fails to state a claim upon which relief can be granted.

## II.     Procedural Background

On or about March 7, 2014, Plaintiffs commenced, *pro se*, a civil action in the Superior Court of the District of Columbia against British Airways entitled *Edward K. Gamson and Lowell E. Canaday v. British Airways Plc*, Case No. 2014 CA 001386 B. British Airways removed the Superior Court case to this Court on March 28, 2014, pursuant to 28 U.S.C. §§ 1331 and 1441.

## III.    Statement of Facts

Plaintiffs allege that they "utilized British Airways to book their trip from Washington Dulles Airport to London, England, and then to Granada, Spain, with a return from Lisbon, Portugal, via London to Washington Dulles."  Complaint at p. 2, ¶ 8 (Dkt. No. 1-1).  Plaintiffs allege that, in a telephone conversation with a British Airways representative, Plaintiff "Dr. Gamson clearly explained that Plaintiffs wished to travel to Granada, Spain" but that "[t]he electronic ticket that Plaintiffs received referred to 'Grenada', without indicating the country, airport code, or flight duration."  *Id.* at pp. 2-3, ¶¶ 9-10.

Plaintiffs allege that they "boarded their flight from Gatwick Airport believing they were traveling to Granada, Spain" and, during the flight, "realized they were instead traveling to Grenada, West Indies."  Complaint at p. 3, ¶ 11 (Dkt. No. 1-1).

Plaintiffs claim that "British Airways breached the parties' contract by booking Plaintiffs on a flight and flying them from London, England, to Grenada, West Indies, instead of to Granada, Spain."  Complaint at p. 4, ¶ 15 (Dkt. No. 1-1).  Plaintiffs also assert causes of action for gross negligence and negligence based on conduct that allegedly resulted

in the issuance of the supposedly erroneous tickets.  *Id.* at pp. 4-5.  Plaintiffs seek damages in

the amount of $34,000 for "the value of their tickets for their ruined vacation trip, non-

refundable expenses for their lost vacation in Spain, lost wages, and other associated

expenses."  *Id.* at p. 5.

**IV.**   **Standard of Review**

      The Court has described the standard of review governing a motion to dismiss as

follows:

> "To survive a [Rule 12(b)(6)] motion to dismiss, a
> complaint must contain sufficient factual matter, accepted as
> true, to state a claim to relief that is plausible on its face."
> *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173
> L.Ed.2d 868 (2009) (internal quotation marks omitted); *accord*
> *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955,
> 167 L.Ed.2d 929 (2007).  In *Iqbal*, the Supreme Court reiterated
> the two principles underlying its decision in *Twombly*:  "First,
> the tenet that a court must accept as true all of the allegations
> contained in a complaint is inapplicable to legal conclusions."
> 556 U.S. at 678, 129 S.Ct. 1937.  And "[s]econd, only a
> complaint that states a plausible claim for relief survives a
> motion to dismiss."  *Id.* at 679, 129 S.Ct. 1937.
>
>       A claim is facially plausible when the pleaded factual
> content "allows the court to draw the reasonable inference that
> the defendant is liable for the misconduct alleged."  *Id.* at 678,
> 129 S.Ct. 1937.  "The plausibility standard is not akin to a
> 'probability requirement,' but it asks for more than a sheer
> possibility that a defendant has acted unlawfully."  *Id*.  A
> pleading must offer more than "labels and conclusions" or a
> "formulaic recitation of the elements of a cause of action," *id.*,
> quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955, and
> "[t]hreadbare recitals of the elements of a cause of action,
> supported by mere conclusory statements, do not suffice."  *Id*.
>
>       When considering a motion to dismiss under Rule
> 12(b)(6), the complaint is construed liberally in plaintiff's favor,
> and the Court should grant plaintiff "the benefit of all inferences
> that can be derived from the facts alleged."  *Kowal v. MCI*

*Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).[1]
Nevertheless, the Court need not accept inferences drawn by the
plaintiff if those inferences are unsupported by facts alleged in
the complaint, nor must the Court accept plaintiff's legal
conclusions.  *See id.*; *Browning v. Clinton*, 292 F.3d 235, 242
(D.C. Cir. 2002).  In ruling upon a motion to dismiss for failure
to state a claim, a court may ordinarily consider only "the facts
alleged in the complaint, documents attached as exhibits or
incorporated by reference in the complaint, and matters about
which the Court may take judicial notice."  *Gustave-Schmidt v.
Chao*, 226 F. Supp.2d 191, 196 (D.D.C. 2002) (citations
omitted).

*Berry v. Coastal Intern. Sec., Inc.*, No. 12-1420, 2013 WL 4831940 at *3 (D.D.C. Sept. 11,

2013).[2]

## V.  Argument

### A.  The Montreal Convention Exclusively Governs, and Preempts, Plaintiffs' Claim That British Airways Transported Them to an Incorrect Stopping Place

#### 1.  Plaintiffs' Claim Arises Under the Montreal Convention

Plaintiffs' claim that British Airways breached the parties' contracts by "flying them

from London, England, to Grenada, West Indies, instead of to Granada, Spain" arises under

the Convention for the Unification of Certain Rules for International Carriage by Air, Done

at Montreal on May 28, 1999, ICAO Doc. No. 9740 (entered into force on November 4,

---

[1]  "[E]ven though a *pro se* complaint must be construed liberally, the complaint must still present
a claim on which the Court can grant relief."  *Tefera v. OneWest Bank, FSB*, No. 13-1055, 2014
WL 346294 at *3 (D.D.C. Jan. 31, 2014) (citations omitted).

[2]  Because Plaintiffs cannot, as a matter of law, state actionable claims against British Airways in
this case, amendment of their Complaint would be futile and should, accordingly, be disallowed.
*See S.K. Innovation, Inc. v. Finpol*, 854 F. Supp.2d 99, 106 (D.D.C. 2012) ("It is clear, however,
that amendment should not be permitted if it would be futile.  In other words, if the proposed
amendment would still render the complaint deficient, courts need not grant leave.") (citations
omitted).

2003), *reprinted in* S. Treaty Doc. No. 106-45, 1999 WL 33292734 ("the Montreal

Convention").  The United States has been bound by the Montreal Convention since

November 4, 2003.  United States Department of State, *Treaties in Force – A List of Treaties

and Other International Agreements of the United States in Force on January 1, 2013* at 346-

47;[3] *Kalantar v. Lufthansa German Airlines*, 402 F. Supp.2d 130, 139 n.10 (D.D.C. 2005).

The Montreal Convention governs an airline's liabilities related to international air

transportation.  *Kalantar*, 402 F. Supp.2d at 139 & n.10; *Knowlton v. American Airlines,

Inc.*, No. 06-854, 2007 WL 273794 at *2 (D. Md. Jan. 31, 2007).  The Montreal Convention

superseded its predecessor, the Convention for the Unification of Certain Rules Relating to

International Transportation by Air, October 12, 1929, 49 Stat. 3000, T.S. No. 876 ("the

Warsaw Convention"), which had previously governed an airline's liabilities related to

international air transportation.  *Kalantar*, 402 F. Supp.2d at 139 & n.10; *Knowlton*, 2007

WL 273794 at *2.  Like the Warsaw Convention, the Montreal Convention is a treaty ratified

by the United States and is thus "the law of this land."  *El Al Israel Airlines, Ltd. v. Tseng*,

525 U.S. 155, 167 (1999).

Article 1(1) of the Montreal Convention provides that "[t]his Convention applies to

all international carriage of persons, baggage or cargo performed by aircraft for reward."

Article 1(2) defines "international carriage" as follows:

> [A]ny carriage in which, according to the agreement between
> the parties, the place of departure and the place of destination,
> whether or not there be a break in the carriage or a transhipment,
> are situated either within the territories of two States Parties, or
> within the territory of a single State Party if there is an agreed
> stopping place within the territory of another State, even if that
> State is not a State Party.

---

[3]  This document is available at www.state.gov/documents/organization/218912.pdf.

Plaintiffs' "place of departure" and "place of destination" was Sterling, Virginia

(Washington Dulles International Airport), with stopping places in other countries.

Complaint at p. 2, ¶ 8, p. 4, ¶ 14 (Dkt. No. 1-1).[4]  Thus, Plaintiffs' "place of departure" and

"place of destination" was in the United States, a State Party to the Montreal Convention, so

Plaintiffs' air transportation by British Airways constituted "international carriage" as

defined in Article 1(2).  As a result, Plaintiffs' claim that British Airways breached the

parties' contracts by "flying them from London, England, to Grenada, West Indies, instead of

to Granada, Spain" arises out of "international carriage" within the meaning of Article 1(2)

of the Montreal Convention.

2.  **The Montreal Convention Preempts Plaintiffs' Claim That British Airways Transported Them to an Incorrect Stopping Place**

Where, as in this case, the Montreal Convention applies, it exclusively governs a

passenger's claims:

> In the carriage of passengers, baggage and cargo, any
> action for damages, however founded, whether under this
> Convention or in contract or in tort or otherwise, can only be
> brought subject to the conditions and such limits of liability as
> are set out in this Convention without prejudice to the question
> as to who are the persons who have the right to bring suit and
> what are their respective rights.  In any such action, punitive,

---

[4]  *See In re Korean Air Lines Disaster of September 1, 1983,* No. 83-0345, 1985 WL 670382 at
*6 (D.D.C. July 25, 1985) ("[I]n a trip consisting of several parts it is the *ultimate* destination
that is accorded treaty jurisdiction.") (emphasis in original; citation omitted); *Knowlton*, 2007
WL 273794 at *1 n.1 (holding that the Montreal Convention applied to a roundtrip ticket from
Maryland to the Dominican Republic, even though that country was not a party to the
Convention); *Baah v. Virgin Atlantic Airways Ltd.*, 473 F. Supp.2d 591, 597 (S.D.N.Y. 2007)
("The 'place of destination' in the context of a round-trip airline ticket is the ultimate destination
specified by the contract of carriage between the passenger and the carrier, not the endpoint of
the outbound leg of the trip.") (citation omitted).

6

> exemplary or any other non-compensatory damages shall not be
> recoverable.

Montreal Convention, Article 29.  Thus, where it applies, the Montreal Convention preempts

any claim by a passenger that arises outside the Convention, including a claim arising under

local law.  *See Tseng*, 525 U.S. at 174-75 ("[T]he Convention's preemptive effect is clear:

The treaty precludes passengers from bringing actions under local law when they cannot

establish air carrier liability under the treaty.").  Accordingly, the Montreal Convention

preempts Plaintiffs' state law claim that British Airways transported them to an incorrect

stopping place and provides the exclusive basis for seeking a remedy for such claim.  *See*

*Knowlton*, 2007 WL 273794 at *5; *Sobol v. Continental Airlines*, No. 05-8992, 2006 WL

2742051 at *4-5 (S.D.N.Y. Sept. 26, 2006).

**B.**      **The Montreal Convention Provides No Remedy for Plaintiffs' Claim**

Plaintiffs did not plead a cause of action under the Montreal Convention.  But, even if

they had, Plaintiffs' claim that British Airways transported them to an incorrect stopping

place would not be legally cognizable under the Convention.  As the court in *Knowlton*

explained:

> The Montreal Convention imposes three categories of
> strict liability on air carriers.  Article 17 provides for carrier
> liability in the event of accidental death or bodily injury of a
> passenger while on board, embarking, or disembarking the
> plane.  Montreal Convention at art. 17.  Article 17 also includes
> liability for damage to or loss of baggage.  *Id.*  Article 18 of the
> Montreal Convention addresses liability for damage to cargo,
> and Article 19 imposes liability for damages resulting from
> delay of passengers, baggage, or cargo.  *Id.* at arts. 18-19.
> These categories are meant to be exclusive and encompass the
> scope of international airline liability.

2007 WL 273794 at *2; *Booker v. BWIA West Indies Airways Ltd.*, 2007 WL 1351927 at *4

(E.D.N.Y. May 8, 2007) ("The Montreal Convention defines three situations in which a

carrier is liable:  (1) death or bodily injury of passengers; (2) damage to baggage; and (3)

delay of passengers, baggage and cargo."), *aff'd*, 307 Fed. Appx. 491 (2nd Cir. 2009).

    Plaintiffs' claim that British Airways transported them to an incorrect stopping place

does not arise under Article 17, 18 or 19 of the Montreal Convention.  The Montreal

Convention does not provide any remedy to a passenger who is seeking damages because a

carrier transported him precisely in accordance with the ticket as issued, as occurred here.

Thus, Plaintiffs' claim is not cognizable under the Montreal Convention.  *See Sobol*, 2006

WL 2742051 at *5 ("Beyond the provision for liability attributable to accidents (Article 17,

*supra*), the Conventions contain provisions attaching liability when there is damage to

checked luggage resulting in economic loss (Article 18), or economic loss occasioned by

delay in transportation (Article 19).  There is no provision dealing directly with the

downgrading of a ticket, and what liability, if any, should attach.  Because the Conventions

do not provide for carrier liability here on the claims for breach of contract, conversion, and

unjust enrichment, the claims are barred."); *Tseng*, 525 U.S. at 161 ("[I]f not allowed under

the Convention, [recovery] is not available at all.").

### C.    The Airline Deregulation Act Preempts Plaintiffs' Claim That British Airways Issued Their Tickets Incorrectly

    Plaintiffs' other claim is that British Airways issued their tickets to an incorrect

stopping place, Grenada, West Indies, instead of Granada, Spain.  This claim, which

Plaintiffs assert in their breach of contract cause of action and repeat in their gross

negligence and negligence causes of action, arguably does not arise under the Montreal

Convention.  Nonetheless, this claim is preempted, not by the Convention, but by 49 U.S.C.

§ 41713(b)(1), the express preemption provision of the Airline Deregulation Act ("ADA").

That provision states in part as follows:

> [A] State . . . may not enact or enforce a law, regulation, or other
> provision having the force and effect of law related to a price,
> route, or service of an air carrier that may provide air
> transportation under this subpart.

49 U.S.C. § 41713(b)(1).

Section 41713(b)(1) was enacted so that "[s]tates would not undo federal deregulation

with regulation of their own" (*American Airlines, Inc. v. Wolens*, 513 U.S. 219, 222 (1995)),

and its words "express a broad pre-emptive purpose."  *Morales v. Trans World Airlines, Inc.*,

504 U.S. 374, 383 (1992).  Section 41713(b)(1) preempts state common law causes of action,

as well as state statutes and regulations.  *Northwest, Inc. v. Ginsberg*, No. 12-462, 2014 WL

1301865 at *6 (U.S. Apr. 2, 2014) ("[S]tate common law rules fall comfortably within the

language of the ADA pre-emption provision. . . .  [T]he ADA's deregulatory aim can be

undermined just as surely by a state common-law rule as it can by a state statute or

regulation.") (citation omitted).[5]  Section 41713(b)(1) applies to foreign air carriers, such as

British Airways, as well as to domestic air carriers.  *In re Air Cargo Shipping Services*

*Antitrust Litigation*, 697 F.3d 154, 163 (2nd Cir. 2012) ("The legislative history of the

preemption provision and the amendments to it confirm that Congress intended the term 'air

carrier' in the preemption provision to mean domestic and foreign air carriers alike.").

---

[5]  In general, Section 41713(b)(1) does not preempt state common law breach of contract causes of action, since they are based on "self-imposed . . . privately ordered obligations."  *Wolens*, 513 U.S. at 228-29.

Applying Section 41713(b)(1), the first question is whether Plaintiffs' incorrect ticketing claim is "related to a price, route, or service" of British Airways.  Plainly, it does. Plaintiffs' claim relates directly to British Airways's issuance of tickets, and an airline's "service" includes the ticketing of its passengers:

> "Services" generally represent a bargained-for or anticipated provision of labor from one party to another.... [This] leads to a concern with the contractual arrangement between the airline and the user of the service.  Elements of the air carrier service bargain include items such as ***ticketing***, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself.

*Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1433 (7th Cir. 1996) (citation omitted, emphasis added); *Dogbe v. Delta Air Lines, Inc.*, No. 11-6289, 2013 WL 4522572 at *13 (E.D.N.Y. Aug. 27, 2013) ("An airline's ticketing practices and procedures also constitute a 'service of an air carrier.' ") (citations omitted).  Thus, Plaintiffs' claim is clearly and closely "related to" the ticketing "service" that British Airways provided.

The next question under Section 41713(b)(1) is whether Plaintiffs' claim seeks to "enforce" a contract, which would not be preempted (as indicated in footnote 5 above), or to "enforce" state common law external to a contract, which would be preempted.  Plaintiffs do not seek to enforce any contract, as shown below.

In their breach of contract cause of action, Plaintiffs allege that, by telephone, they entered into contracts of carriage with British Airways that included a flight to Granada, Spain.  Complaint at p. 2, ¶ 9, p. 3, ¶ 10, p. 4, ¶ 14 (Dkt. No. 1-1).  Yet Plaintiffs admit that their electronic ticket confirmation showed a flight to "Grenada," not to "Granada."  *Id*. at p. 3, ¶ 10.  Plaintiffs' contracts of carriage were formed when British Airways actually issued their electronic tickets, not during any telephone conversation they had with a British

Airways representative leading up to the issuance of the tickets.  *See Korean Air Lines*, 1985

WL 670382 at *2 ("[T]he relevant 'contract of carriage' . . . in the transportation of

passengers is the airline ticket."); *Lavine v. American Airlines, Inc.*, No. 2917, 2011 WL

6003609 at *3 & n.8 (Md. App. Dec. 1, 2011) ("[A]ppellants asserted that 'there is no ticket,'

while appellee responded that 'this [email] is their ticket for travel.'  We are persuaded that

the email or 'E-Ticket' functions as the 'ticket or other written instrument' for the purposes

of 14 CFR 253.").

Thus, Plaintiffs' claim is not for breach of the contracts of carriage they actually

entered into with British Airways.  According to Plaintiffs, their tickets indicated a stopping

place in "Grenada" (Complaint at p. 3, ¶ 10 (Dkt. No. 1-1)),[6] and they further allege that

British Airways transported them to Grenada, West Indies (*id.* at p. 3, ¶¶ 11-12), thereby

fully performing the contracts of carriage as issued.  Rather, Plaintiffs' claim, as expressed in

their breach of contract, gross negligence and negligence causes of action, is that British

Airways was negligent in its conduct leading up to the issuance of the tickets.  Thus,

---

[6]  Admission of any evidence that the parties verbally agreed to an itinerary that included a flight
to "Granada," not to "Grenada" as set forth in Plaintiffs' electronic ticket confirmation, would be
prohibited by the parol evidence rule.  *See Intelsat USA Sales Corp. v. Juch-Tech, Inc*., 935 F.
Supp.2d 101, 113 (D.D.C. 2013) ("When deciding contract claims, courts ordinarily focus on the
contract's written language instead of earlier promises.  *See 1010 Potomac Assocs. v. Grocery
Mfrs. of Am., Inc.*, 485 A.2d 199, 210 (D.C. 1984) (explaining the parol evidence rule, which
'promote[s] stability of transactions by preventing disgruntled parties from avoiding obligations
by alleging oral understandings that conflict with their written agreements when those
agreements were reduced to writing in order to forestall such contentions'); 11 Williston on
Contracts § 33:1 (4th ed.) ('The parol evidence rule is a substantive rule of law that prohibits the
admission of evidence of prior or contemporaneous oral agreements, or prior written agreements,
whose effect is to add to, vary, modify, or contradict the terms of a writing which the parties
intend to be a final, complete, and exclusive statement of their agreement.... [I]t seeks to achieve
the related goals of ensuring that the contracting parties, whether as a result of
miscommunication, poor memory, fraud, or perjury, will not vary the terms of their written
undertakings, thereby reducing the potential for litigation.').").

Plaintiffs actually seek to recover under a tort theory, not a contract theory, and this they cannot do given the express preemption provision of the ADA.  The ADA preempts Plaintiffs' incorrect ticketing claim because their claim constitutes a direct attempt by Plaintiffs to enforce District of Columbia state common law – external to the parties' contracts – with respect to the ticketing "service" that British Airways provided to Plaintiffs. *See Travel All Over the World*, 73 F.3d at 1434-35; *Dogbe*, 2013 WL 4522572 at *13 ("There can be no question that plaintiff's challenge to Delta's ticketing and boarding procedures under New York consumer protection laws is preempted by the ADA.").[7]

## VI.   Conclusion

For the foregoing reasons, Defendant British Airways Plc requests that the Court

---

[7]  *See also Delta Air Lines, Inc. v. Black*, 116 S.W.3d 745, 756-57 (Tex. 2003) ("We now turn to Black's remaining claims for misrepresentation and fraud, which he argues survive ADA preemption.  We disagree.  Because Black's misrepresentation and fraud claims are premised on Delta's ticketing and boarding procedure, they are directly related to Delta's services."), *cert. denied*, 540 U.S. 1181 (2004); *Hallam v. Alaska Airlines, Inc.*, 91 P.3d 279, 287 (Alaska 2004) ("Here, Hallam's claims plainly relate to a price, route, or service of an air carrier.  He challenges the airline's policy of classifying tickets as refundable or non-refundable; he challenges the airline's policy of overbooking flights; and he challenges the terms included in all tickets, relating to timetables, routes, departure and arrival times, and fares.  His Unfair Trade Practices Act claims are preempted and the superior court properly denied him leave to add them."); *Cannava v. USAir, Inc.*, No. 91-30003, 1993 WL 565341 at *6 (D. Mass. Jan. 7, 1993) (plaintiff's state common law tort claims preempted because they related to airline's "processing [of] his flight ticket").

dismiss Plaintiffs' Complaint, in its entirety, with prejudice.

Respectfully submitted,


Dated:  April 4, 2014                      /s/ Kenneth S. Nankin
                                           Kenneth S. Nankin (DC Bar No. 420058)
                                           Nankin & Verma PLLC
                                           4550 Montgomery Avenue, Suite 775N
                                           Bethesda, Maryland  20814
                                           (202) 463-4911
                                           (202) 463-6177 fax
                                           ksn@nankin.com

                                           Counsel for Defendant British Airways Plc

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of April, 2014, I served the foregoing

DEFENDANT'S STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF ITS

MOTION TO DISMISS and the accompanying NOTICE OF ELECTRONIC FILING by

delivering true and correct copies thereof by first class U.S. mail, postage prepaid, to:

> Edward K. Gamson
> 1901 23rd Street, NW
> Washington, DC  20008
> Plaintiff *Pro Se*
>
> Lowell E. Canaday
> 1901 23rd Street, NW
> Washington, DC  20008
> Plaintiff *Pro Se*

> /s/ Kenneth S. Nankin
> Kenneth S. Nankin (DC Bar No. 420058)
> Nankin & Verma PLLC
> 4550 Montgomery Avenue, Suite 775N
> Bethesda, Maryland  20814
> (202) 463-4911
> (202) 463-6177 fax
> ksn@nankin.com
>
> Counsel for Defendant British Airways Plc

14