UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EDWARD K. GAMSON, *et al.*,

Plaintiffs,

v.

BRITISH AIRWAYS, PLC,

Defendant.

Civil Action No. 14-527 (JEB)

**MEMORANDUM OPINION**

This case proves the truth of Mark Twain's aphorism that "[t]he difference between the right word and the almost right word is the difference between lightning and a lightning bug." Except here only a single letter's difference is involved.

Plaintiffs Edward Gamson and Lowell Canaday were set to fly first class from Washington through London to Granada, Spain, for some much-needed relaxation. Defendant British Airways, perhaps believing a Caribbean vacation preferable, instead booked the last leg of the trip to Grenada, in the West Indies. The couple only realized the error after departing London, probably somewhere over the North Atlantic. Although they eventually returned safely to Washington, they had missed out on their planned Spanish trip. As a result, they filed this *pro se* suit in D.C. Superior Court for damages based on British Airways' negligence and breach of contract in its erroneous booking.

Defendant has removed the matter to this Court on the ground that at least one of Plaintiffs' claims arises under the Montreal Convention, a treaty governing international air travel, which provides federal subject-matter jurisdiction. British Airways now moves to dismiss, arguing that Plaintiffs cannot state a claim under the Convention and that the U.S.

1

Airline Deregulation Act preempts any remaining claims. Believing that the Montreal Convention does not completely preempt this case and that removal was thus improper, the Court remands the case back to the Superior Court.

I.  **Background**

According to the Complaint, which must be presumed true for the purposes of this Motion, Plaintiffs, having gone two years without a vacation, planned a trip to Granada and Seville in Spain. Compl., ¶ 7. They booked their flights with Defendant British Airways, intending to travel from Washington Dulles Airport to London, and then to Granada, with a return flight from Lisbon, Portugal, to Washington Dulles. Id., ¶ 8. Plaintiff Gamson clearly explained to Defendant's agent that they wished to travel to Granada, Spain, and Defendant's agent on his own initiative suggested that Plaintiffs connect through London's Gatwick Airport. Id., ¶¶ 9-10. Gamson agreed and booked the tickets, which were transferred electronically to Plaintiffs and referred to "Grenada," without any indication of the country, airport code, or flight duration. Id., ¶ 10. After arriving in the sunny Caribbean, as opposed to sunny Andalusia, Plaintiffs learned that British Airways had made this error before. Id., ¶ 12.

They brought suit in the Superior Court for breach of contract, negligence, and gross negligence, seeking damages for the value of their tickets, non-refundable expenses for their lost vacation in Spain, lost wages, and other associated expenses. Id., ¶¶ 13-21. On March 28, 2014, Defendant removed the case to this Court, pursuant to 28 U.S.C. § 1441, on the ground that Plaintiffs' cause of action "arises under" federal law within the meaning of 28 U.S.C. § 1331. See Notice of Removal, ¶ 6. The federal law in question is the Convention for the Unification of Certain Rules for International Carriage by Air, on May 28, 1999, ICAO Doc. No. 9740 (entered into force on November 4, 2003), reprinted in S. Treaty Doc. No. 106-45, 1999 WL 33292734

("Montreal Convention"). Having removed the matter, British Airways now moves to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that the Montreal Convention and the Airline Deregulation Act, 49 U.S.C. § 41713(b)(1), preempt Plaintiffs' state-law claims. In addition to opposing that Motion, Plaintiffs ask the Court to remand the matter to Superior Court.

## II.     Analysis

In general, a defendant may remove a state-court action to federal court under 28 U.S.C. § 1441(a) "if it qualifies as a 'civil action . . . of which the district courts of the United States have original jurisdiction,' unless Congress expressly provides otherwise." Rivet v. Regions Bank of Louisiana, 522 U.S. 470, 474 (1998) (quoting 28 U.S.C. § 1441(a)). Under 28 U.S.C. § 1447(c), however, once a case has been removed, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." As a result, the Court has an obligation to examine its own jurisdiction over the action at every stage of the litigation.

British Airways removed this suit by invoking the Court's "arising under" jurisdiction pursuant to 28 U.S.C. § 1331. See Notice of Removal, ¶ 6. This section provides for federal jurisdiction when, for example, a plaintiff raises a federal cause of action in his complaint. See Louisville & Nashville Railroad Co. v. Mottley, 211 U.S. 149, 152 (1908). BA, however, does not argue that Plaintiffs have asserted a federal claim here; instead, it relies on federal preemption. As a general proposition, federal preemption of state law is a defense that does not justify removal under the rule of Mottley. See Caterpillar Inc., v. Williams, 482 U.S. 386, 392-93 (1987). There is, however, an exception: If "Congress intended [the federal statute at issue] to provide the exclusive cause of action," then removal of a plaintiff's state-law claim is proper

3

because "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." Beneficial National Bank v. Anderson, 539 U.S. 1, 8-9 (2003) (emphasis added). Defendant argues that this is such a case: "[T]he State Action is removable to this Court by British Airways pursuant to 28 U.S.C. § 1441(a) because it is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1331, in that Plaintiffs' claim that British Airways transported them to an incorrect stopping place arises exclusively under the Montreal Convention, a treaty of the United States." Notice of Removal, ¶ 12 (emphasis added).

In deciding whether removal was proper, then, the Court must determine whether complete preemption applies here. If the treaty does completely preempt, the Court has jurisdiction; if it does not, the Court must next consider whether the Airline Deregulation Act alternatively provides removal jurisdiction.

### A. Montreal-Convention Preemption

Courts are divided on whether the Montreal Convention ever affords complete preemption, even if the claim falls clearly within its scope. Some have held that complete preemption is appropriate. See, e.g., Husmann v. Trans World Airlines, Inc., 169 F.3d 1151, 1153 (8th Cir. 1999) (observing that absence of complete preemption would undermine "uniformity" and "certainty" of Warsaw Convention, predecessor to Montreal Convention); Donkor v. British Airways Corp., 62 F. Supp. 2d 963, 967 (E.D.N.Y. 1999) ("[T]he Warsaw Convention completely preempts the claims that it governs[.]"); Singh v. N. Am. Airlines, 426 F. Supp. 2d 38, 44-45 (E.D.N.Y. 2006) (interpreting El Al Israel v. Tsui Yuan Tseng, 525 U.S. 155 (1999), as authorizing complete preemption); Knowlton v. Am. Airlines, Inc., No. 06–854, 2007 WL 273794, at *3 (D. Md. Jan. 31, 2007) (finding that Montreal Convention completely

4

preempted state-law claims); Mateo v. JetBlue Airways Corp., 847 F. Supp. 2d 383, 387 (E.D.N.Y. 2012) (finding that "complete preemptive power" of Montreal Convention was corollary of its being "exclusive cause of action."); Fadhliah v. Societe Air France, No. 13–06142, 2013 WL 6571601, at *5 (C.D. Cal. Oct. 1, 2013) (looking to *travaux preparatoires* and U.K. courts' interpretation of Montreal Convention to support its conclusion that Convention had preemptive effect).

Other courts, conversely, have held that the Convention does not afford complete preemption. See, e.g., Narkiewicz-Laine v. Scandinavian Airlines Systems, 587 F. Supp. 2d 888, 889 (N.D. Ill. 2008) (relying on Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co., Ltd., 522 F.3d 776, 781 (7th Cir. 2008), to find no complete preemption); Serrano v. Am. Airlines, Inc., No. 08-2256, 2008 WL 2117239, at *4 (C.D. Cal. May 15, 2008) (interpreting Tseng to authorize only federal, not complete, preemption); Jensen v. Virgin Atlantic, No. 12–6227, 2013 WL 1207962, at *4 (C.D. Cal. Mar. 25, 2013) (finding Montreal Convention to be an "affirmative defense"); DeJoseph v. Continental Airlines, Inc., No. 13–7714, 2014 WL 1891407, at *5 (D.N.J. May 12, 2014) (rejecting complete preemption).

Fortunately, the Court need not decide this issue here because even if the Convention does completely certain preempt state-law claims, it does not completely preempt Plaintiffs' particular ones. Article 29 of the Convention provides that "[i]n the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention[.]" Montreal Convention, Art. 29 (emphasis added). The dispositive question, then, is whether Plaintiffs' claims address injuries occurring "in the carriage of passengers." They do not.

As the Complaint expressly states, Plaintiffs are suing for "breach of contract and tort for British Airways' egregious error in <u>booking</u> the European portion of Plaintiffs' September 2013, long-awaited vacation from Washington to Europe and back." Compl., ¶ 1 (emphasis added). BA offers no authority for the notion that an erroneous booking should be considered part of "the carriage of passengers." While other provisions of the Convention refer to liability for death, physical passenger injury, and damage to baggage (Article 17), damage to cargo (Article 18), and delay (Article 19), nothing mentions liability for bookings. See <u>Tseng</u>, 525 U.S. at 162 (Articles 17-19 define "the three kinds of liability for which the Convention provides"). When defining the scope of the Convention to cover "international carriage," furthermore, the Explanatory Note to Article 1 provides: "In accordance with Article 1, paragraphs (2) and (3), 'international carriage' includes all segments of an international journey as shown on the ticket, including domestic segments of an international journey." The booking of the ticket itself is not part of this "international journey," being a condition precedent to the journey itself.

If Plaintiffs had alleged that the actionable conduct occurred <u>on board</u> the flight to Grenada – *i.e.*, "in the carriage of passengers" – this Court would have jurisdiction under the Convention. If, for example, the booking was correct but Plaintiffs were put on the wrong plane or the pilot mistakenly flew the airplane to Grenada, the actionable conduct would be covered. In this instance, however, the alleged wrong took place well before Plaintiffs embarked, and this Court can find no reason to extend the scope of the Convention to encompass the facts alleged here.

British Airways, in fact, concedes that the booking claim "arguably does not arise under the Montreal Convention." Mot. to Dismiss at 12-13. Indeed, BA acknowledges that it "never contended that the Convention preempts Plaintiffs' incorrect ticketing claim." Reply at 2.

Instead, it maintains that Plaintiffs have actually made another claim for breach of contract resulting from the erroneous transportation rather than the mistaken booking. BA's entire argument relies upon one fragment in the Complaint alleging injury for the airline's "booking and flying" Plaintiffs to the wrong destination. Compl., ¶15. At no point is this supposedly separate claim elaborated upon in the Complaint or in other documents filed by Plaintiffs, and they do not appear to consider it to be a basis for liability. Indeed, the entirety of the Complaint rests on the booking mistake. Considering that it is well established that laypersons acting as *pro se* litigants are not to be held to the same stringent standards for drafting pleadings as legal counsel, see Hughes v. Rowe, 449 U.S. 5, 9 (1980), it would be unfair to Plaintiffs for the Court to allow removal based on this strained interpretation of the Complaint.

As the Court cannot base its jurisdiction on Montreal-Convention preemption here, removal under that treaty was improper.

B.     ADA Preemption

Although BA does not mention the Airline Deregulation Act as a basis for removal, it does assert that the ADA preempts certain of Plaintiffs' claims. See Mot. to Dismiss at 13-14. Whether or not this is correct, the Court wishes to make clear that the ADA defense provides no basis for removal jurisdiction here. The rule in Mottley directs the Court to examine a plaintiff's complaint for a federal cause of action to ground subject-matter jurisdiction. Unlike complete preemption, which the ADA does not provide, see Wayne v. DHL Worldwide Express, 294 F.3d 1179, 1184 (9th Cir. 2002), a federal defense of preemption, either anticipated in the complaint or argued by the defendant, cannot provide the basis for jurisdiction. See Caterpillar, 482 U.S. at 393. As stated in Mottley, to allow a federal defense to create subject-matter jurisdiction would

7

be "inconsistent with any known rule of pleading, so far as we are aware, and is improper." 211 U.S. at 153. The ADA, consequently, does not offer an alternative basis for removal.

## III. Conclusion

As the removal pursuant to 28 U.S.C. § 1441 was improper, the case will be remanded to the Superior Court. Plaintiffs in one of their pleadings sought "punitive damages" for BA's removal. See ECF No. 7 (Pl. Opp. to Removal). The Court interprets this as a request for sanctions, which will be denied because the removal here was not in bad faith or for the purpose of delay. A separate Order consistent with this Opinion will issue this day.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: June 5, 2014